UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **GEORGIA DEPARTMENT OF COMMUNITY HEALTH,** : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> **UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES, et al.,** : <br> : <br> Defendants. : <br> : | Civil Action No. 13-1281 (GK) |

## MEMORANDUM OPINION

Defendant United States Department of Health and Human Services ("HHS"), through its operating division, the Centers for Medicare & Medicaid Services ("CMS") (collectively, "Defendants"), has filed a Rule 59(e) Motion to Alter or Amend the Judgment ("Motion") [Dkt. No. 29] issued by the Court partially granting Plaintiff Georgia Department of Community Health's ("Georgia") Motion for Summary Judgment and ordering CMS to return $90,050,230. See Memorandum Opinion on the Motions for Summary Judgment [Dkt. No. 27].

Upon consideration of the Motion, Opposition ("Opp'n") [Dkt. No. 30], Reply ("Reply") [Dkt. No. 31], Sur-Reply ("Sur-Reply") [Dkt. No. 34], the entire record herein, and for the reasons stated

below, Defendants' Motion to Alter or Amend the Judgment is **granted in part and denied in part.**

## I. BACKGROUND

A brief recitation of the facts is necessary. For a detailed summary of the facts, see this Court's Memorandum Opinion on the Motions for Summary Judgment [Dkt. No. 27].

In 2003, Georgia launched a new system to process claims submitted by medical providers. It suffered from severe problems that resulted in significant delays in paying the providers, who were threatening to stop caring for patients. In response to this crisis, Georgia and CMS agreed that Georgia could make "advance" payments to providers until the new system was fixed. Between April 1, 2003, and June 30, 2005, Georgia made approximately $2 billion in advance payments to providers under this arrangement. Georgia Dep't of Cmty. Health, HHS Departmental Appeals Board ("DAB" or "the Board") No. 2521, 6 (Jun. 28, 2013) [hereinafter DAB No. 2521].

For its own internal accounting purposes, Georgia classified the advance payments as "provider receivables" (i.e. money to be recouped from Medicaid providers). However, for purposes of its

Quarterly Statement of Expenditures ("QSE")[1] that it submitted to CMS, Georgia reported the advance payments as current-quarter expenditures. Id.

In the process of preparing its State fiscal year 2005 financial statements, Georgia inadvertently included the federal share of its provider receivables balance -- $45,025,115.09 ("$45 million") -- in its decreasing adjustment on the QSE for the quarter ended September 30, 2005 ("September 2005 QSE"). Id. This error had the effect of mistakenly crediting $45 million to CMS. Of particular note for the issues raised in this motion, Georgia "netted the $45,025,115.09 provider receivables adjustment against an unrelated transaction in the amount of $15,289,462 (an increase in expenditures)." AR 63 (Georgia DAB Br. at 10, n.9). It was the net of the two amounts ($29,735,653) that was reported as a reduction in expenditures (i.e., a credit to CMS). Id.

While preparing its financial statements for State fiscal year 2006, Georgia[2] again inadvertently credited $45 million to

---

[1] The QSE is an "accounting of actual recorded expenditures" for the quarter, which details and reconciles how the federal grant award monies were spent.
[2] While the number of employees involved in making the two $45 million errors is not relevant to the outcome of the case, Georgia has indicated that it was a single employee who made the mistakes. See Georgia Motion for Summary Judgment [Dkt. No. 13] at 14-16 (referencing errors made by "a State employee").

-3-

CMS, this time on the QSE for the quarter ended June 30, 2006. DAB No. 2521 at 7-8.

Combined, Georgia erroneously credited CMS $90,050,230 between 2005 and 2006 ("$90 million"). Georgia did not realize its errors until 2008. Once Georgia discovered the errors, it attempted to reclaim the $90 million by including the amount in the QSE for the quarter ended June 30, 2009. DAB No. 2521 at 8. CMS ultimately disallowed the $90 million adjustment. Georgia appealed CMS's decision to the Board. On June 28, 2013, the Board sustained the entire $90 million disallowance. See generally DAB No. 2521.

Georgia then filed its Complaint with this Court on August 23, 2013 [Dkt. No. 1]. The parties filed cross-Motions for Summary Judgment [Dkt. Nos. 13, 14]. On February 10, 2015, this Court upheld DAB's decision to disallow the $90 million adjustment, but also found that CMS had been unjustly enriched and ordered CMS to return the $90 million to Georgia. See Order on Motions for Summary Judgment [Dkt. No. 26] and accompanying Memorandum Opinion ("Opinion") [Dkt. No. 27].

## II. STANDARD OF REVIEW

Defendants seek relief under Fed. R. Civ. P. 59(e), which provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after entry of the judgment." Fed. R. Civ. P. 59(e). A district court may grant a Rule 59(e) motion if

there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest injustice." Ciralsky v. Cent. Intelligence Agency, 355 F.3d 661, 671 (D.C. Cir. 2004) (internal quotation and citation omitted). "[A] Rule 59(e) motion may not be used to . . . raise arguments . . . that could have been raised prior to the entry of judgment." GSS Grp. Ltd. v. Nat'l Port Auth., 680 F.3d 805, 812 (D.C. Cir. 2012) (citation and internal quotation marks omitted).

The Court has discretion in deciding a Rule 59(e) motion. Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam), although such relief "is an extraordinary remedy which should be used sparingly." Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (3d ed. 2004).

**III. ANALYSIS**

    **A. Adequate Legal Remedy**

In its Opinion, the Court found that Georgia did not have an adequate remedy at law, a prerequisite to considering equitable relief. The remedy at law was inadequate because, under the Board's interpretation of the relevant Regulations, the limitations periods for recuperating credits made erroneously were cut short. In some instances, Georgia was actually time-barred from recovering the mistaken credits the moment they were made.

-5-

Defendants argue that Georgia has not offered any evidence showing what portion of the credits were immediately time-barred, that the portion is "likely . . . quite small," and that accordingly, "Georgia has not shown that the rationale underlying the Court's ruling . . . applies to a significant portion of its claims." Motion at 5.

Defendants' argument is not persuasive. As the Court explained in its Opinion, under the Board's interpretation, the two-year limitations period was shortened for all the mistaken credits. Defendants support their argument by focusing on Georgia's negligence and CMS's initial disallowance, Motion at 5-7. However, this focus is misplaced as neither Georgia's negligence nor the disallowance affects whether Georgia had an adequate remedy at law.

In their Reply, Defendants argue, for the first time, that the two-year limitation is actually a statute of repose, rather than a statute of limitations. Not only was this argument not raised in the cross-Motions for Summary Judgment, Defendants failed to even raise it in their opening Motion to Alter or Amend. As mentioned previously, a Rule 59(e) motion "may not be used to . . . raise arguments . . . that could have been raised prior to the entry of judgment." Nat'l Port Auth., 680 F.3d at 812 (internal quotation and citation omitted). In addition, "[c]ourts ordinarily

-6-

decline to consider arguments that are raised for the first time in a reply to an opposition." Taitz v. Obama, 754 F. Supp. 2d 57, 61 (D.D.C. 2010). Accordingly, the Court will not consider Defendants' belated argument that the two-year limitation is a statute of repose.

### B. Equitable Relief

Defendants next argue that the Supreme Court's recent decision in Armstrong v. Exceptional Child Center, Inc., 135 S. Ct. 1378 (2015), prohibits this Court from providing equitable relief. See generally Reply at 2-8. In Armstrong, private medical providers alleged that Idaho's reimbursement rates violated Section 30(A) of the Medicaid Act and sought "to enjoin [Idaho Health and Welfare Department officials] to increase these rates." Armstrong at 1382. The Court held that the Medicaid Act implicitly precludes private enforcement of Section 30(A), and therefore, the medical providers could not invoke the Court's equitable powers. Id. at 1385.

Defendants read Armstrong too broadly when they suggest that "a party that fails to obtain relief under the Medicaid Act through the prescribed administrative process cannot then resort to equity." Reply at 2 (emphasis omitted). Georgia does not rely on an implied cause of action, nor does it ask the Court to provide injunctive relief to enforce a federal statute. The rationales

relied on by the Armstrong Court are simply not analogous to the case at hand.

Defendants also argue, again for the first time, that the Supreme Court's decision in Sebelius v. Auburn Regional Medical Center, 133 S. Ct. 817 (2013), controls and prevents the Court from "resort[ing] to equitable principles." See Motion at 7-9. A Rule 59(e) motion may not be used as "a vehicle for presenting theories or arguments that could have been advanced earlier." Turkmani v. Republic of Bolivia, 273 F. Supp. 2d 45, 49 (D.D.C. 2002). Defendants have offered no justification for their failure to raise this argument--which rests on a two-year old opinion. Once again, the Court declines to consider Defendants' belated argument which could have been advanced in CMS's original Motion for Summary Judgment.

### C. Adjustment and Clarification of Remedy

As discussed previously, in its September 2005 QSE, Georgia netted the $45,025,115 mistaken credit against an unrelated amount of $15,289,462 (an increase in claimed expenditures for prior quarters). See supra at 3; AR 63; Motion at 12-13. It was the net of the two amounts, $29,735,653, which was reported as a credit to CMS. See supra at 3.

Defendants contend that the $90,050,230 judgment in Georgia's favor should be reduced by the $15,289,462 ("$15 million") because,

as a result of the netting, Georgia never actually made a request for Federal financial participation ("FFP")[3] for the $15 million. Georgia does not directly dispute that claims for the $15 million in FFP were not timely filed, but rather argues that the Court's finding of unjust enrichment is equally applicable to the $15 million.

As to this claim, Georgia's right to receive FFP for the $15 million in expenditures is subject to the two-year statute of limitations. This is not an instance where Georgia had an inadequate remedy at law for claiming FFP for the expenditures, and therefore, equitable remedies are not available. Because Georgia netted the mistaken $45 million credit against the $15 million in intended expenditure claims, it never submitted its claims for these expenditures and only included $29,735,653 of the mistaken credit on the September 2005 QSE.

While it is not disputed that, at the end of the day, Georgia's errors cost the state $90 million, Georgia only mistakenly credited CMS with $74,760,768. The netting of the mistaken credit resulted in Georgia failing to timely file claims for $15,289,462 in FFP, and therefore $15,289,462 in unclaimed expenditures cannot be included in the $90 million judgment.

---

[3] FFP is the federal share of a state's Medicaid expenditures.

-9-

Accordingly, the Court **grants** Defendants' Motion with regard to reducing this Court's prior judgment from $90,050,230 to $74,760,768.

Defendants also ask the Court to clarify the remedy ordered. Georgia shall submit an upward adjustment in the amount of $74,760,768 on a future QSE as soon as is reasonably possible, which CMS shall allow, to effectuate the return of the erroneous credits.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Alter or Amend shall be **granted in part** and **denied in part**. An Order shall accompany this Memorandum Opinion.

June 22, 2015

_____
Gladys Kessler
United States District Judge

**Copies via ECF to all counsel of record**